# United States Tax Court

167 T.C. No. 1

JOHN R. DEE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 27904-15W.                           Filed July 2, 2026.

————

P provided information to R regarding T. R's Whistleblower Office (WBO) forwarded P's information to the examination team that had recently finished working on a pre-existing audit regarding T. The examination team told the WBO that it had already identified and acted on the issues identified by P. The WBO denied P's claim for an award under I.R.C. § 7623(b). P petitioned this Court for review.

*Held*: This Court has jurisdiction over whistleblower cases when the whistleblower's information is received by an examination team regarding an open examination as defined by Rev. Proc. 2005-32, 2005-1 C.B. 1206.

*Held, further*, P has not shown that the administrative record requires completion or supplementation.

*Held, further*, the WBO's determination to deny P's claim for an award was not an abuse of discretion.

————

John R. Dee, pro se.

*Stephanie M. Profitt*, *Zachary A. Gray*, *John T. Arthur*, and *Darrick D. Sun*, for respondent.


OPINION

NEGA, *Judge*: This whistleblower case is currently pending before the Court on respondent's Motion for Summary Judgment (respondent's Motion). Respondent filed contemporaneously the Administrative Record and an Affidavit of Teresa Homola, certifying the genuineness and completeness of the Administrative Record. Petitioner filed a Reply to Motion for Summary Judgment (petitioner's Reply). Respondent filed a Motion for Leave to File Response to Reply to Motion for Summary Judgment (respondent's Motion for Leave) and contemporaneously lodged a Response to Reply to Motion for Summary Judgment (respondent's Response). Petitioner objected to respondent's Motion for Leave. The Court granted respondent's Motion for Leave, and respondent's Response was filed on the same day.

For the reasons set forth below, we conclude that we have jurisdiction over this case, and we will grant respondent's Motion.

*Background*

On March 1, 2010, petitioner submitted to the Internal Revenue Service (IRS) Whistleblower Office (WBO) Form 211, Application for Award for Original Information, that claimed a target taxpayer (Named Taxpayer) underreported its federal income tax in an estimated amount of $10.85 million for tax year 2008. Petitioner claimed to have identified several issues relating to unreported income from gift card breakage and improper deductions relating to depreciation and impairments. Petitioner's claims were based on publicly available information including his review of the Named Taxpayer's 2008 Securities and Exchange Commission (SEC) Form 10–K, Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934. Petitioner attached portions of the Named Taxpayer's 2008 SEC Form 10–K to the Form 211 and annotated particular line items or statements that he felt the IRS should review.

After an initial review, on March 9, 2010, the WBO assigned petitioner's claim to Guadalupe Ortiz, a tax analyst in the WBO (Analyst

Ortiz). Analyst Ortiz forwarded petitioner's claim to Joe Ann Booker, a whistleblower subject matter expert, on May 24, 2010.

Unrelated to petitioner's claim, the IRS was already engaged in an audit relating to the Named Taxpayer while the WBO was reviewing petitioner's claim. According to the IRS Audit Plan, the IRS commenced this examination on or about October 30, 2009, and anticipated finishing substantive work on the audit in April 2010. The IRS performed the audit accordingly and issued Notices of Proposed Adjustments on April 6 and 7, 2010. The IRS "concluded" the audit regarding the Named Taxpayer on June 2, 2010, with the execution of Form 4549, Income Tax Discrepancy Adjustments, determining no adjustments for tax year 2008. At that time, the examination team had not yet received petitioner's information, and the examination team would not receive it until more than a month later, on July 6, 2010.

On or about July 6, 2010, petitioner's claim was referred to Dawn Cotter, a revenue agent with the examination team of the Named Taxpayer (RA Cotter). At this time, the examination regarding the target taxpayer was still undergoing internal IRS review.

RA Cotter completed Form 11369, Confidential Evaluation Report on Claim for Award, on August 4, 2010. In an attachment to Form 11369, RA Cotter analyzed petitioner's information in three categories: gift card breakage, depreciation, and impairments. With respect to the gift card breakage issue, RA Cotter stated that examination of the issue before petitioner's information was received resulted in no change. With respect to the depreciation issue, RA Cotter stated that examination of the issue before petitioner's information was received likewise resulted in no change. Finally, with respect to impairments, RA Cotter stated that the issue was already examined before petitioner's information was received and had resulted in an increase to the Named Taxpayer's income of approximately $2,663,898; however, this increase was for tax year 2007, not tax year 2008.

RA Cotter indicated that no issues were added to the audit after the receipt of petitioner's information and all of the issues petitioner identified had already been considered by the examination team before the conclusion of the audit regarding the Named Taxpayer on June 2, 2010.

An audit report signed on June 2, 2010, confirms RA Cotter's statements. Nothing in the record indicates that any issues were re-examined after the receipt of petitioner's information.

No documented action was taken by the WBO on petitioner's claim until August 2015, when the claim was reassigned to WBO analyst Lev Glikman (Analyst Glikman). On August 19, 2015, Analyst Glikman mailed a preliminary denial letter to petitioner. On October 6, 2015, Analyst Glikman prepared an award recommendation memorandum (ARM), recommending that petitioner's claim be denied. In the ARM Analyst Glikman concluded that no administrative action had been taken on the basis of petitioner's information.

On October 6, 2015, the WBO issued to petitioner a final determination denying his whistleblower claim "because the IRS took no action based on the information that you provided." On November 5, 2015, petitioner timely filed a Petition with this Court, disputing the WBO's denial of his claim.

*Discussion*

I.    *Jurisdiction*

We have an independent obligation to assure ourselves of our jurisdiction, regardless of the positions taken by the parties in a particular case. *See, e.g., Charlotte's Off. Boutique, Inc. v. Commissioner*, 121 T.C. 89, 102 (2003), *supplemented by* T.C. Memo. 2004-43, *aff'd*, 425 F.3d 1203 (9th Cir. 2005). This Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent provided by Congress. *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985).

Section 7623(b)(1)[1] provides that a whistleblower is entitled to mandatory awards of "at least 15 percent but not more than 30 percent of the proceeds collected" if the Commissioner "proceeds with any administrative or judicial action . . . based on information brought to the [Commissioner's] attention by [that whistleblower]." The WBO's "determination of the amount of such award . . . shall depend upon the extent to which the individual substantially contributed to such action." § 7623(b)(1). Section 7623(b)(4) vests this Court with jurisdiction to

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

review "[a]ny determination regarding an award under paragraph (1), (2), or (3)."[2]

This Court initially took an expansive view as to its whistleblower jurisdiction, concluding that section 7623(b)(4) vested the Court with jurisdiction over the appeal of "any determination to deny an award" and rejecting the Commissioner's argument that a reviewable determination exists only if the WBO takes an action and then determines to make an award. *See Cooper v. Commissioner*, 135 T.C. 70, 75–76 (2010); *see also Lacey v. Commissioner*, 153 T.C. 146, 163 n.19 (2019) ("[T]he Tax Court has jurisdiction where, pursuant to the WBO's determination, the individual does not receive an award.").

The U.S. Court of Appeals for the D.C. Circuit—to which all whistleblower appeals lie, absent stipulation to the contrary, *see* § 7482(b)(1) (flush text) and (2)—expressly overruled our holdings in *Cooper* and *Lacey*, *see Li v. Commissioner*, 22 F.4th 1014, 1017 (D.C. Cir. 2022). In *Li v. Commissioner*, 22 F.4th at 1018, the D.C. Circuit held that this Court has jurisdiction over whistleblower appeals only when the IRS proceeds with administrative or judicial action and thus this Court lacks jurisdiction over threshold rejections of claims.

Then, in *Lissack v. Commissioner*, 125 F.4th 245, 255 (D.C. Cir. 2025), *aff'g* 157 T.C. 63 (2021), the D.C. Circuit concluded that the Tax Court had jurisdiction over a denial where there was no factual dispute that the WBO "referred [the whistleblower's] submission to the IRS, and an IRS revenue agent initiated an examination." The D.C. Circuit's jurisdictional analysis depends on whether the IRS "*proceed*[*ed*] with an action"—not whether the IRS "'collected proceeds' based on the whistleblower's information." *Id.* In support of drawing this line, the D.C. Circuit reasoned that making jurisdiction depend on whether proceeds were collected based on the whistleblower's information would "render[] the jurisdictional grant coextensive with the merits of a whistleblower appeal." *Id.* at 255.

The D.C. Circuit recently provided further clarification on whistleblower jurisdiction in *Kennedy v. Commissioner*, 142 F.4th 769, 775–76 (D.C. Cir. 2025), *aff'g in part* T.C. Memo. 2021-3, holding that even if the WBO forwards a whistleblower's information to another

---

[2] This case concerns only paragraph (1) of section 7623(b). Paragraph (2) concerns reduced awards for "less substantial contribution," and paragraph (3) concerns reduced awards for individuals who "planned and initiated the actions that led to the underpayment of tax."

division of the IRS, the Tax Court lacks jurisdiction over the whistleblower's claim unless the IRS actually conducted an examination of the target taxpayer. *See also, e.g.*, *Pratt v. Commissioner*, T.C. Memo. 2026-31, at *4–5.

Finally, in *Estate of Insinga v. Commissioner*, 149 F.4th 709, 718 (D.C. Cir. 2025), the D.C. Circuit concluded that the Tax Court had jurisdiction "because the IRS proceeded against [the taxpayers] with its investigations, and [the whistleblower's] information was forwarded to both investigative teams."

Under *Li* and *Kennedy*, the Court lacks jurisdiction over a petition relating to a whistleblower's claim if that claim is rejected at the threshold (*Li*) or forwarded to an examination team and no examination occurs (*Kennedy*). Then under *Estate of Insinga v. Commissioner*, 149 F.4th at 718, the Court has jurisdiction over a petition relating to a whistleblower's claim if that claim is forwarded to an active or open examination, regardless of whether action was taken *based on* the whistleblower's claim. *See Lissack v. Commissioner*, 125 F.4th at 255 (holding that the Court has jurisdiction when the IRS "proceeds with" an action under section 7623(b)(1)).

In *Villa-Arce v. Commissioner*, 68 F.4th 1328, 1333 (D.C. Cir. 2023), the D.C. Circuit divided an examination into two separate administrative actions for the purposes of evaluating the merits of a whistleblower claim. The D.C. Circuit analyzed that same examination as undivided for the purpose of deciding jurisdiction.

*Estate of Insinga v. Commissioner*, 149 F.4th at 718, suggests that the Court would not have jurisdiction if an examination is closed and the IRS does not take steps to reopen it. That raises the question of when an examination should be considered "closed."

This case presents one such possible "point in time" to delineate when an examination is closed. In this case petitioner's whistleblower claim was forwarded to an examination team after that team had finished work on the audit. The audit work concluded on June 2, 2010, when RA Cotter signed an audit report, and the examination team received petitioner's claim information on July 6, 2010.

But the conclusion of an audit (as embodied by an audit report) would be a flawed bright line to delineate between open and closed examinations for at least two reasons. First, the IRS must take many additional steps to actually collect proceeds from a taxpayer after a

concluded audit, including the IRS Appeals process and a potential case in the Tax Court. The whistleblower's information could substantially contribute to the benefit of the IRS during each of those steps, which would entitle the whistleblower to an award. *See Kennedy v. Commissioner*, 142 F.4th at 773 ("Should the IRS 'proceed[] with any administrative or judicial action . . . based on information' provided by a whistleblower, that whistleblower 'shall . . . receive as an award' between 15 and 30 per cent of the recovery, depending on 'the extent to which the individual substantially contributed to [the] action.'" (quoting § 7623(b)(1))). Second, the IRS has already set forth a bright-line test in its own revenue procedures. Rev. Proc. 2005-32, § 4.01, 2005-1 C.B. 1206, 1206, sets out a definition of a "closed case":

> (1) For purposes of this revenue procedure, an agreed case is closed after examination when the Service notifies the taxpayer in writing after a conference, if any, of adjustments to the taxpayer's liability or acceptance of the taxpayer's tax return or exempt status without change. A case involving a refund or credit in excess of the statutory sum that is subject to review by the Joint Committee on Taxation, pursuant to section 6405, is not a closed case until Joint Committee review procedures and any necessary follow-up are complete. Also, in a fully agreed case in which the taxpayer and the Service have entered into a closing agreement, as described in section 7121, following examination, the case is not a closed case until the closing agreement is signed by an appropriate Service official.

> (2) An unagreed income, estate, gift, or chapters 41 through 44 excise tax case, or a worker classification or plan qualification case subject to section 7436 or section 7476, is closed after examination when the period for filing a petition with the United States Tax Court, as specified in the statutory notice of deficiency or notice of determination issued to the taxpayer, expires with no petition filed.

*See also* Statement of Procedural Rules, 26 C.F.R. § 601.105(b)(4). While the Court is not bound by the revenue procedures promulgated by the Commissioner, *see Compaq Comput. Corp. v. Commissioner*, 113 T.C. 363, 372 (1999), they are the official statement of procedure and may provide useful guidance, *see Nationalist Movement v. Commissioner*, 102 T.C. 558, 583 (1994), *aff'd per curiam*, 37 F.3d 216 (5th Cir. 1994); *see*

*also Thomas v. Commissioner*, 162 T.C. 9, 20–21 (2024) (same in context of innocent spouse actions).

On the record before us, this case appears to have been an agreed case for the purposes of Rev. Proc. 2005-32. Under the standard for agreed cases set forth in that revenue procedure, the IRS case against the Named Taxpayer was not a closed case on July 6, 2010, when petitioner's information was received by the examination team, because the case was still undergoing internal review.

Even if the case against the Named Taxpayer was not an agreed case, it was certainly not yet closed on July 6, 2010. Because no Notice of Deficiency had issued, the period for filing a petition could not have expired.

The WBO forwarded petitioner's information to the examination team of the Named Taxpayer on July 6, 2010. Because the IRS proceeded with an examination against the Named Taxpayer and that examination was not closed within the meaning of Rev. Proc. 2005-32 as of July 6, 2010, when the examination team received petitioner's claim information, we have jurisdiction over the Petition.[3] *See Estate of Insinga v. Commissioner*, 149 F.4th at 718.

II.  *Summary Judgment Standard in Whistleblower Cases*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Under Rule 121(j), the summary

---

[3] Because this approach focuses on the extent to which the Secretary has proceeded with any administrative or judicial action, it avoids the concerns in *Lissack* and *Kennedy* about our jurisdictional grant becoming coextensive with the merits of a whistleblower appeal. Specifically, our approach focuses on whether there was an open IRS proceeding against the targeted taxpayer to which the whistleblower's information was forwarded. The question of how much the whistleblower's information contributed to that proceeding is left to the merits of the whistleblower appeal. The D.C. Circuit's recent opinion in *Trongone v. Commissioner*, No. 25-1050, 2026 WL 1700981, at *4 (D.C. Cir. June 12, 2026) (citing *Whistleblower 972-17W v. Commissioner*, 159 T.C. 1, 9 (2022)), confirms our conclusion as it holds that in circumstances like this, "the question whether the IRS ultimately collected proceeds *based on* [the taxpayer's] application is a merits question."

judgment standard is different when we review whistleblower award determinations because "we must confine ourselves to the administrative record to decide whether there has been an abuse of discretion." *Van Bemmelen v. Commissioner*, 155 T.C. 64, 78 (2020). In a so-called record rule whistleblower case, "summary judgment serves as a mechanism for deciding, as a matter of law, whether the [WBO's] action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 79.

In reviewing the WBO's determination, we may consider any "contemporaneous explanation of the agency decision" in the record and will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Whistleblower 15977-18W v. Commissioner*, T.C. Memo. 2021-143, at *15 (first quoting *Tourus Recs., Inc. v. DEA*, 259 F.3d 731, 738–40 (D.C. Cir. 2001); and then quoting *Kasper v. Commissioner*, 150 T.C. 8, 24 (2018)).

III.    *Completing and Supplementing the Administrative Record*

The administrative record designated by the agency may be completed with evidence that was considered by the agency but omitted from the record by mistake or design. *Van Bemmelen*, 155 T.C. at 75–76. There is a strong presumption of regularity that the Commissioner properly designated the administrative record to include all documents considered by the WBO in making the final determination. *See id.* at 74. Completing the record with such omitted evidence requires a substantial showing with clear evidence that the documents with which the party seeks completion were actually before the WBO. *Id.* at 74–75.

Further, we may supplement the administrative record by considering evidence that was not before the WBO when it reached its determination only in exceptional circumstances. *See Berenblatt v. Commissioner*, 160 T.C. 534, 549 (2023). We may only consider such extrarecord evidence where (1) "the agency 'deliberately or negligently excluded documents that may have been adverse to its decision'"; (2) "background information [is] needed 'to determine whether the agency considered all the relevant factors'"; or (3) "the 'agency failed to explain administrative action so as to frustrate judicial review.'" *Van Bemmelen*, 155 T.C. at 76 (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010)); *see Calloway v. Harvey*, 590 F. Supp. 2d 29, 38 (D.D.C. 2008) ("Underlying all of these exceptions is the assessment that 'resort to extra-record information [is necessary] to enable judicial

review to become effective.'" (alteration in original) (quoting *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989))).

In petitioner's Reply, he included and relied upon portions of the Named Taxpayer's 2010 SEC Form 10–K, portions of other cases filed by petitioner in the Tax Court, and a summary of an alleged conversation between petitioner and Analyst Glikman.

### A. *2010 SEC Form 10–K and Other Tax Court Cases*

With respect to the 2010 SEC Form 10–K, petitioner relies on that document to establish that the IRS collected proceeds from the Named Taxpayer on the basis of an audit regarding the Named Taxpayer for tax year 2009. Nothing about the 2010 SEC Form 10–K contradicts respondent's position that the audit was already completed prior to the time that the examination team received petitioner's claim information.

Petitioner has not shown that the 2010 SEC Form 10–K or the content of the other Tax Court cases were actually before the WBO; therefore, those documents cannot qualify as omitted evidence necessary to complete the record.

Furthermore, the 2010 SEC Form 10–K and the documents pulled from other Tax Court cases do not meet any exception to the general rule excluding extrarecord evidence. Petitioner has not shown that respondent deliberately or negligently excluded the documents from the record because they are adverse to respondent's decision. Neither are the documents relied on by petitioner necessary background information to determine whether the IRS considered all of the relevant factors. And finally, nothing in the proposed exhibits or record indicates that the WBO failed to explain its actions so as to frustrate judicial review in this case.

Finally, the WBO's decision is fully explained by the existing record, without completion or supplementation. The WBO denied petitioner's claim because the examination team had already finished examining the issues identified by petitioner before the examination team received petitioner's claim information. Because the Named Taxpayer's 2010 SEC Form 10–K and the excerpts of Tax Court cases relied on by petitioner are neither omitted evidence nor extrarecord evidence fitting any of the three exceptions, we will not complete or supplement the record with these documents.

B.    *Conversation with Analyst Glikman*

The conversation between petitioner and Analyst Glikman appears to concern other, unrelated cases petitioner filed, rather than the case before us.  That conversation does not constitute omitted evidence in this case because, to the extent reported by petitioner, the conversation offers nothing of substance on its face and, even if viewed in the best possible light, would offer nothing not already recorded by Analyst Glikman, the declarant, in his determination.

In the conversation Analyst Glikman purportedly stated: "Collections? What collections? How could you know? You can't know that!"  Analyst Glikman's expression of doubt about petitioner's ability to learn confidential information about collections has no bearing on this case and cannot be added to the record as either omitted or extrarecord evidence.  Nor does the conversation fall into any of the three exceptions set forth above for extrarecord evidence: It is not necessary background information, deliberately or negligently excluded from the record, and it does not indicate a failure to fully explain the WBO's actions so as to frustrate judicial review.

We will not complete or supplement the record with the summary of the purported conversation.

IV.    *Analysis*

After having assured ourselves of our jurisdiction, we find that little remains of this case.  The WBO denied petitioner's claim because no administrative action was taken on the basis of petitioner's information.

> [T]he IRS *proceeds based on* information provided by a whistleblower when the information provided substantially contributes to an action against a person identified by the whistleblower.  For example, the IRS proceeds based on the information provided when the IRS initiates a new action, expands the scope of an ongoing action, or continues to pursue an ongoing action, that the IRS would not have initiated, expanded the scope of, or continued to pursue, but for the information provided.

Treas. Reg. § 301.7623-2(b)(1).  In this case the whistleblower's information did not substantially contribute to an action against the target taxpayer.  And the IRS did not initiate a new action, expand the

scope of the ongoing action, or continue to pursue the ongoing action on the basis of receipt of petitioner's information. Upon receiving petitioner's claim information, the examination team surveyed it and informed the WBO that the examination team had (before receiving the information) already acted on the issues that petitioner identified and finished their work.

Petitioner's contention that he is entitled to a whistleblower award rests entirely on his unsupported speculation that the IRS and WBO fabricated a false record to hide its tracks after completing a hasty audit regarding the Named Taxpayer based on his provided information. That speculation is directly contradicted by the Administrative Record and the timeline of this case. There is nothing in the record to indicate that the WBO forwarded any of petitioner's claim information to the examination team before July 6, 2010. Nor is there anything to indicate that the IRS proceeded with an administrative action based on petitioner's information after July 6, 2010. The examination team merely surveyed petitioner's claim information and informed the WBO that the examination team had independently identified and addressed all of the issues petitioner identified before receiving petitioner's claim. Additionally, there is ample evidence in the record that the examination commenced on October 30, 2009, and largely concluded with Notices of Proposed Adjustments in April 2010 (exactly on schedule with the IRS Audit Plan).

On the Administrative Record before us, we discern no abuse of discretion in the WBO's denial of petitioner's claim.

V.     *Conclusion*

After reviewing the Administrative Record, we conclude that the WBO's determination to deny petitioner's claim for an award was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Van Bemmelen*, 155 T.C. at 72 (quoting *Kasper*, 150 T.C. at 21). We will therefore grant respondent's Motion.

To reflect the foregoing,

*An appropriate order and decision will be entered.*